UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIA C. ALCARAZ,

    Plaintiff,

v.                                         Case No. 1:17-cv-255
                                       Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplement security income (SSI).

        Plaintiff alleged a disability onset date of March 30, 2013. PageID.213. Plaintiff identified her disabling conditions as: rheumatoid arthritis; osteoarthritis; anxiety; and severe depression. PageID.217. Prior to applying for DIB and SSI, plaintiff completed the 12th Grade, with past employment as a school lunch assistant, substitute teacher, day care teacher, residential care aide, and machine operator. PageID.56, 218. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on August 5, 2015. PageID.45-57. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, ALJ Condon found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 30, 2013. PageID.47.[1] In this regard, the ALJ found that plaintiff's earnings from 2013 did not rise to the level of substantial gainful activity. PageID.47. The ALJ also found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. PageID.51.

At the second step, the ALJ found that plaintiff had severe impairments of: osteoarthritis; degenerative joint disease of both knees, status-post left knee arthropathy; rheumatoid arthritis; and obesity. PageID.48. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.49.

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift or carry 20 pounds occasionally and 10 pounds frequently. In an eight-hour work day, the claimant can sit, stand or walk all for at least six hours and requires the option to change position every 30 to 45 minutes for three to five minutes. She is limited to never climbing ladders, ropes or scaffolds; can only occasionally kneel, crouch, crawl or climb ramps or stairs; and can frequently balance, stoop or squat. She must avoid all exposure to dangerous or unprotected machinery or work at unprotected heights, and never use air, power, torque, pneumatic, or vibratory tools.

PageID.49. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.56.

---

[1] The Court notes discrepancies between plaintiff's brief, records in the file, and the ALJ's decision with respect to the procedural timeline. Among other things, plaintiff's application for DIB states an alleged onset date of May 4, 2013, while her application for SSI states an onset date of March 30, 2013. PageID.182, 184. The ALJ used the earlier date. Plaintiff stated that her hearing took place on March 17, 2016; it occurred on May 27, 2015. PageID.63. Plaintiff also stated that the ALJ issued his decision on May 27, 2015; as discussed, it was issued on August 5, 2015. However, none of these irregularities or scrivener's errors affect the outcome of this case.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.56-57. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations such as sorter (220,000 jobs in the national economy), hand packager (114,000 jobs in the national economy), and router (161,000 jobs in the national economy). PageID.57. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 30, 2013 (the alleged onset date) through August 5, 2015 (the date of the decision). PageID.57.

### III. DISCUSSION

Plaintiff set forth two issues on appeal:

**A. The ALJ failed to comply with SSR 06-03p when evaluating the opinion of Nurse Practitioner (NP) Linda Bowers.**

Plaintiff contends that the ALJ did not properly evaluate NP Bowers' April 3, 2015 physical RFC questionnaire as required under Social Security Ruling (SSR) 06-03p.[2] PageID.523-526. The ALJ addressed the questionnaire as follows:

> I assign minimal weight to the April 2015 physical residual functional capacity assessment of nurse practitioner Linda Barnes [sic] finding restrictions that the vocational expert testified would preclude all competitive employment (Exhibit 20F). Nurse Barnes [sic] indicated that the claimant could perform a limited range of sedentary exertion work, but would miss more than four days of work per month and was incapable of performing even "low stress" jobs (*id.* at 2). Nurse Barnes' [sic] assessment does not qualify as medical opinion evidence, and the extreme limitations included in her assessment are not well supported by the medical record. Based on my consideration of the medical evidence of record and the claimant's testimony at the hearing, I conclude that she is limited to a range of light work

---

[2] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation. *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006). The Court notes that SSR 06-03p was rescinded on March 27, 2017. However, it is applicable here.

> described in the above RFC. Therefore, I assign very limited weight appropriate to this opinion (Ex. 20F).

PageID.55.

NP Bowers was not an acceptable medical source under the regulations. *See* 20 C.F.R. §§ 404.913(a) and 416.1513(a) ("[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment[ ]"; such sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists). However, in SSR 06-03p, the Commissioner acknowledged that with the growth of managed health care in recent years, nurse practitioners have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists. *See* SSR 06-03p (Aug. 9, 2006). SSR 06-03p recognized that opinions from other medical sources, such as nurse practitioners, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *Id*.

The question here is whether the ALJ properly evaluated NP Bowers' opinion. There is no requirement that the ALJ give reasons for the weight assigned to a nurse practitioner. The requirement that the Commissioner give "good reasons" for the weight given to an opinion applies only to "treating sources" (i.e., a physician, psychologist or other acceptable medical source who has provided medical treatment or evaluation). *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007) ("[b]efore determining whether the ALJ violated *Wilson* by failing to properly consider a medical source, we must first classify that source as a 'treating source' ").

> In addition to acceptable medical sources, the claimant may also present evidence from "other sources." 20 C.F.R. § 404.1513(d). "Other sources include, but are not limited to . . . medical sources not listed [as acceptable medical sources]

6

(for example, nurse practitioners, physicians' assistants, . . . [and] therapists)[.]" Id. at § 404.1513(d)(1). This court has "previously held that an ALJ has discretion to determine the proper weight to accord opinions from 'other sources' . . . ." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997)). Although the opinions of "other sources" cannot establish the existence of a disability, their perspective should be given weight by the adjudicator and should be "evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file." *Id.* (citing SSR 06–03P).

*Engebrecht v. Commissioner of Social Security*, 572 Fed. Appx. 392, 397-98 (6th Cir. 2014).

Here, the ALJ's evaluation of NP Bowers' opinion did not go into great detail regarding why NP Bowers' opinion was not consistent with the medical record. However, the Court concludes that it was sufficient because the ALJ had set forth a rather extensive review of plaintiff's medical history (PageID.50-55), which support his finding that NP Bowers' "extreme limitations . . . are not well supported by the medical record." Accordingly, this claim of error will be denied.

> **B. The ALJ failed to create an accurate RFC assessment and therefore erroneously found work at Step Five.**

The ALJ contends that ALJ failed to meet his burden at Step Five, because the ALJ "made an erroneous Step Five determination that is unsupported by the substantial weight of the evidence." In turn, this error was caused by the ALJ's erroneous finding at step four that plaintiff had the RFC to perform a reduced range of light work. As discussed, *supra*, plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones*, 336 F.3d at 474. The Sixth Circuit has rejected plaintiff's apparent argument, i.e., that the ALJ failed to meet his burden because he made an incorrect RFC determination at step five:

> [W]e reject plaintiff's contention that once the burden of proof shifts to the Commissioner at step five, the Commissioner is then required to prove a claimant's Residual Functional Capacity. The determination of a claimant's Residual

7

> Functional Capacity is a determination based upon the severity of his medical and mental impairments. This determination is usually made at stages one through four, when the claimant is proving the extent of his impairments. If a claimant does not secure an official "Residual Functional Capacity" assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC assessment at step five. The step five analysis is meant to determine, given the severity of the impairments already proven, whether there are jobs in the economy which a claimant can perform. . . .
>
> To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner. For these reasons, we reject the argument that if Residual Functional Capacity is not proven by the claimant before step five, the burden of proving it shifts to the Commissioner.

*Her v. Commissioner of Social Security*, 203 F.3d 388, 392 (6th Cir. 1999).

It appears that plaintiff's actual argument is that the ALJ's RFC assessment "falls short of including the entirety of Plaintiff's documented limitations." Plaintiff's Brief at PageID.597. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

Plaintiff contends that the ALJ erred because contrary to SSR 02-1p, the ALJ did not consider plaintiff's morbid obesity in combination with her other impairments. Plaintiff contends that "[her] obesity obviously causes a significant limitation in standing/walking" and that "[t]his is not reflected in the RFC as the ALJ found the [p]laintiff can stand/walk 6 of 8 hours in a typical workday." Plaintiff's Brief at PageID.597-98.

SSR 02-1p provides in pertinent part:

> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added

> paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).

While SSR 02-1p provides guidance for the ALJ's in evaluating a claimant's obesity, it does not create a separate procedure requiring the Commissioner to consider obesity in every case.

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411-12 (6th Cir. 2006).

Here, the ALJ considered plaintiff's obesity in formulating her RFC. The ALJ found that plaintiff had a severe impairment of obesity and addressed this condition throughout his review of the medical record. In this regard, the ALJ cited a rheumatological assessment in November 2014, in which "all joints in the lower extremities were assessed as normal" and "[t]here was no tenderness, swelling, effusion, or limitation of motion of the shoulders, elbows, hips, knees or ankles." PageID.53. The ALJ noted that in January 2015, plaintiff expressed an interest in bariatric surgery, had recently lost 40 pounds and reported doing great with exercise and weight loss, while at the same time discussing ongoing joint pain and stiffness, and exhibiting a limping gait. PageID.53. The ALJ expressly addressed plaintiff's obesity as follows:

> The medical evidence of record shows that the claimant is obese. The claimant reported she is five feet and four inches tall. The available medical evidence of records shows the claimant's weight was in excess of 342 pounds. Therefore, the claimant's BMI was at least 50 kg/m2, which is with the range of morbid obesity. There is a diagnosis of morbid/extreme obesity. The claimant is reportedly trying to lose weight and looks forward to bariatric surgery. Nevertheless, the medical records do not show that her obesity significantly limits her physical ability to perform work activities or results in abnormalities on imaging as set forth in musculoskeletal, respiratory, endocrinal, or cardiovascular body systems. The combined effects of her obesity with her other impairments - including osteoarthritis, degenerative joint disease of the bilateral knees, status-post left knee arthropathy, and rheumatoid arthritis - may be greater than might be expected without obesity. However, I find that her obesity in combination with another medically determinable physical impairment does not significantly limit her physical ability to do work activities consistent with the residual functional capacity adopted (Ex. 1F-22F).

PageID.53.

In summary, the ALJ considered plaintiff's obesity in developing the RFC and made accommodations for this condition including: that in an eight-hour work day, plaintiff can *sit, stand or walk* all for at least six hours; that plaintiff requires the option to change position every 30 to 45 minutes for three to five minutes; and that she never climbs ladders, ropes or scaffolds. PageID.49. Accordingly, plaintiff's claim of error will be denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: March 27, 2018				/s/ Ray Kent
						United States Magistrate Judge